SMEDLEY, Respondent, v. MILWAUKEE AUTOMOBILE INSURANCE COMPANY and another, Appellants.

*January 10—February 7, 1961.*

462

For the appellants there were briefs by *D. J. Regan* of Milwaukee, and *Leo E. Vaudreuil* of Kenosha, and oral argument by *Mr. Regan.*

For the respondent there was a brief by *Goldberg, Previant & Cooper* of Milwaukee, and oral argument by *Albert J. Goldberg.*

HALLOWS, J. The appellant raises five assignments of error. The first assignment is the error of the court in denying the plea in abatement and raises the question whether the Insurance Company can be made a party defendant by virtue of sec. 260.11 (1), Stats., 30 W. S. A., p. 39. This section applies to an action for damages caused by the negligent operation, management or control of a motor vehicle. In construing this section, we must also consider sec. 204.30

(4), 25 W. S. A., p. 310.[1] This latter section creates direct liability to others than the insured on the part of the insurer of a bond or insurance policy covering liability by reason of the operation of a motor vehicle when the injury is caused by the negligent operation, maintenance, use, or defective construction of the vehicle described therein. This condition of direct liability is only read into the type of bond or insurance policy which covers the cause of action described in this section.

The policy upon which the plea in abatement rests is not an insurance policy covering liability by reason of the operation of a motor vehicle, and no vehicle is described therein. The policy issued by the defendant Milwaukee Automobile Insurance Company to defendant McCrossen is an owners', landlords', and tenants' liability policy and insures him against liability because of bodily injury, sickness, or disease caused by an accident arising out of the hazards therein defined. The hazards defined in the policy are the ownership, maintenance, or use of his premises and the operations necessary or incidental thereto, and other hazards not material to the issue. By indorsement, the operations of defendant were extended to include coverage of certain employees, clerical office employees, certain types of construction, and

[1] "(4) Any bond or policy of insurance covering liability to others by reason of the operation of a motor vehicle shall be deemed and construed to contain the following conditions: That the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, irrespective of whether such liability be in praesenti or contingent and to become fixed or certain by final judgment against the insured, when caused by the negligent operation, maintenance, use, or defective construction of the vehicle described therein, such liability not to exceed the amount named in said bond or policy." (25 W. S. A.. pocket part, p. 24.)

iron or steel erection. The Insurance Company admits coverage because the accident happened during the defendant's operation in erecting steel beams. But this coverage does not bring the policy within the terms of sec. 204.30 (4), Stats., because its liability under the policy is not predicated on the operation, maintenance, or use of a motor vehicle described in the policy. The owners', landlords', and tenants' liability policy in this case is not such a policy as is contemplated by this section.

The plaintiff argues that the Insurance Company may be made a party defendant under sec. 260.11, Stats., because the damages were caused by the negligent operation, management or control of a motor vehicle and this crane being mounted on a truck was a motor vehicle. Sec. 260.11 [2] refers to an insurer of motor vehicles and contemplates the type

---

[2] Sec. 260.11 (1) provides in part:

"In any action for damages caused by the negligent operation, management or control of a motor vehicle, any insurer of motor vehicles, which has an interest in the outcome of such controversy adverse to the plaintiff or any of the parties to such controversy, or which by its policy of insurance assumes or reserves the right to control the prosecution, defense, or settlement of the claim or action of the plaintiff or any of the parties to such claim or action, or which by its policy agrees to prosecute or defend the action brought by the plaintiff or any of the parties to such action, or agrees to engage counsel to prosecute or defend said action, or agrees to pay the costs of such litigation, is by this section made a proper party defendant in any action brought by plaintiff in this state on account of any claim against the insured. The right of direct action herein given against an insurer against liability for damages to persons other than the insured arising out of the negligent operation, management or control of a motor vehicle shall exist whether the policy of insurance sued upon was issued or delivered in the state of Wisconsin or not and whether or not the policy or contract of insurance contains a provision forbidding such direct action, provided the accident or injury occurred in the state of Wisconsin."

of insurance policy referred to in sec. 204.30 (4). The complaint alleges negligence on the part of defendant McCrossen in failing to properly manage and control the crane he was operating in respect to swinging the girder up unexpectedly, in swinging the girder too close to the plaintiff, in slackening the boom line, in allowing the girder to crash on the wall, and in failing to obey signals directing the movement of the crane. These are not the usual allegations for the operation, management or control of a motor vehicle but would be sufficient if in fact the crane was a motor vehicle.

The plaintiff argues the mobile crane was a motor vehicle and the fact it was stationary at the time of the accident does not make it any less a motor vehicle, and relies on *Wiedenhaupt v. Van Der Loop* (1958), 5 Wis. (2d) 311, 92 N. W. (2d) 815. That case held a person, who while loading a trailer truck injured his leg when it broke through the platform of the truck, was within the coverage of the automobile policy to which sec. 204.30 (4), Stats., applied. It was stated the truck did not have to be in motion or have a person at the wheel of the vehicle at the time of the accident in order to state a cause of action for negligent operation and control of a motor vehicle. There was no question raised that the truck involved was not a motor vehicle. We held that at the time of the accident the truck was being "used" as a motor vehicle.

The question here is whether the operation and control of the crane at the time of the accident was the operation and control of a motor vehicle within the meaning of the statute. It is undoubtedly true if the unit were being driven on a public street for the purposes of locomotion, it would be considered a motor vehicle. In the record there are several photographs and a lithograph of this unit. Arbitrarily classifying it either as a truck or a hydrocrane without reference to a particular use does not solve the problem. When the unit is in locomotion for the purpose of transporting the

crane, it takes on the essential aspects of a motor vehicle for some purposes. However, after the unit arrives at its destination, the mobile aspect ceases and the crane is operated as an independent immobile unit. The test under the statutes is whether at the time of the accident the unit is being used, managed, controlled, or operated as a motor vehicle in the ordinary meaning of those words. At the time of the accident the unit was stationary, the crane was stabilized, supported, and rendered immobile by outriggers. The unit was not then used as a motor vehicle. Plaintiff was injured by the operation of the crane, not the operation of the truck. We do not believe such use of the unit is within the meaning of the negligent operation, management or control of a motor vehicle as used in sec. 260.11, Stats.

We do not consider the case of *Kanios v. Frederick* (1960), 10 Wis. (2d) 358, 103 N. W. (2d) 114, in point. The street sweeper covered by the insurance policy was on the highway, momentarily stopped. The operator's act of motioning and calling the driver of another car to proceed was stated to be a customary incident of operation of a vehicle in connection with the use of a highway. No question was raised that the sweeper was not a motor vehicle. However, the nature of the vehicle was involved in *Albert v. Regal Ware* (1959), 6 Wis. (2d) 519, 95 N. W. (2d) 240, wherein the insurance policy excluded coverage arising out of the operation of any crane unless its operation was solely for the purpose of locomotion. A material issue of fact arose as to the nature of the vehicle which precluded summary judgment. The dissenting opinion stated the outfit was a crane and its use at the time of the accident was not solely for the purpose of locomotion, and coverage was excluded from the auto insurance policy. Neither of these cases controls the nature of the mobile crane in this case or construes sec. 260.11, Stats.

The case of *Ermis v. Federal Windows Mfg. Co.* (1959), 7 Wis. (2d) 549, 97 N. W. (2d) 485, cited by the plaintiff,

is not in point. The insurance company insuring the defendant operator of the crane was not made a party to the suit but undertook the defense of its insured. The insurance company which became an interpleaded defendant insured the employer of the plaintiff under an automobile liability policy which contained the additional coverage of loading and unloading. The question whether the plaintiff was injured by a crane while loading the truck within the meaning of the auto policy was not decided. The point decided was if the plaintiff was so injured the two policies would prorate and the case was remanded for further proceedings on the liability question. The only issue so far as sec. 260.11, Stats., was concerned was whether the interpleaded insurance company could assert its nonaction clause. We held it could not.

Neither is the case of *Fidelity & Casualty Co. v. Lott* (5th Cir. 1960), 273 Fed. (2d) 500, in point. In the *Lott Case,* a car was used as a gun rest. The insured, leaning against the car and resting his rifle across the top, fired at a deer. For some unexplained reason the bullet went through the top of the car, was deflected downward and inflicted a fatal injury to a passenger. Judgment for wrongful death was recovered against the insured, who then went bankrupt. Suit to recover the judgment was commenced against the insurance company on its policy. It was held the car was being "used" within the language of an insurance policy insuring against injury arising out of operation, management, or use. The soundness of this decision may well be questioned as within the ordinary meaning of the words in the policy and as including an act wholly disassociated from, independent of, and remote from the use of the vehicle.

We must conclude that the plaintiff's cause of action for damages was not for the negligent operation, management or control of a motor vehicle but for damages caused by the

operation of a crane. The defendant Insurance Company's plea in abatement should have been sustained.

The additional question arises whether there was prejudicial error. Plaintiff argues it is not prejudicial for a jury to know an insurance company was a defendant and adverse to the plaintiff, and relies on *Risley v. Lenwall* (1954), 129 Cal. App. (2d) 608, 277 Pac. (2d) 897, and *Causey v. Cornelius* (1958), 164 Cal. App. (2d) 269, 330 Pac. (2d) 468. We do not agree with the reasoning of these cases. Perhaps one cannot say as a matter of law it is prejudicial error in every case if the jury learns an insurance company is involved in a lawsuit. We have held when an insurer is properly joined, it is not improper to refer to the insurer's interest. *Roeske v. Schmitt* (1954), 266 Wis. 557, 64 N. W. (2d) 394; and *Vuchetich v. General Casualty Co.* (1955), 270 Wis. 552, 72 N. W. (2d) 389. But where an insurer is not a party to the suit, this court has reprimanded attorneys who brought forth the fact of insurance before the jury. *Papke v. Haerle* (1926), 189 Wis. 156, 207 N. W. 261. Generally when such improper remarks are made to the jury, the jury is admonished to disregard them by the trial court. In this case there, of course, was no such admonishment.

It would be naive and contrary to trial and court experience to say the knowledge on the part of the jury that the defendant has insurance to cover his liability does not have some effect upon the determination of the issue of negligence and the amount of damages. If this were not so, plaintiffs would not be interested in making insurance companies defendants and the insurance companies would not be interested in keeping from the jury their identity.

We have reviewed the record. The injuries of the plaintiff consisted of a broken ankle to a man sixty-one years of age who was making $3.42 per hour at the time of the accident. The evidence shows the ankle is 40 per cent permanently

disabled and necessitates wearing a brace and using a cane. There was evidence of pain and suffering, expenses for surgery, and the plaintiff was not able to resume his usual work as a structural-steel foreman but can do other jobs. The jury awarded $42,500 for disability including future pain and suffering and loss of future earning capacity, $12,500 for pain and suffering to date of trial, $21,000 for loss of earnings. Medicals amounted to $3,980.62. While it is always difficult to determine the amount of damages, the amount awarded by the jury for the injuries suffered, if not excessive, is at least so high as to indicate the jury may well have been influenced by the fact the defendant Milwaukee Automobile Insurance Company was a party to the action.

Logically, we cannot sustain the verdict against McCrossen individually as contended by the plaintiff when it is not sustainable against his insurer. McCrossen is entitled to a determination of all questions free from the shroud of his insurer. A new trial should be had on all issues.

This disposition of the appeal makes it unnecessary to pass upon the other issues raised excepting to state the trial court was correct in not admitting in evidence defendant's Exhibit 6a, being a union rule, because a proper foundation for such rule as a safety measure was not laid.

*By the Court.*—Judgment reversed, and a new trial granted.