Norton and another, Plaintiffs and Respondents, v. Huisman, d/b/a Rod-Mac Sewer Service, and another, Defendants and Respondents: Iowa National Mutual Insurance Company, Interpleaded Defendant and Appellant.

*June 7—June 29, 1962.*

For the appellant there were briefs and oral argument by *Crosby H. Summers* of Janesville.

For the respondents there was a brief by *Schlotthauer, Jenswold & Reed* of Madison, and oral argument by *John F. Jenswold.*

DIETERICH, J.    The single issue in this case is whether the policy of the Iowa National Mutual Insurance Company affords coverage to the accident in which the plaintiff was injured.

For the purpose of this opinion, we will refer to the interpleaded defendant as "Iowa National," to the defendants as "Huisman," and to the plaintiffs as "Norton."

The following facts are related in Iowa National's affidavit in support of its motion for summary judgment. That on August 27, 1959, LeRoy M. Huisman was in possession and control of a certain sewer-cleaning machine, known as a flexible seweroder which consisted of a large reel or drum about which was wound a long rod made of sections and coupled to a power unit in such a manner as to be able to cause the sectional rod to be unwound from the reel or drum and forced forward or backward in a sewer and at the same time revolve. The rod and power unit, together with the necessary devices to control the operation of the same, was mounted on a steel frame or platform. The unit was a self-contained unit and was not dependent for its operation upon any outside power source or controls, nor did it depend for its operation, while operating, upon its ability to move forward or backward. The sewer cleaner was, at the time of the accident, mounted upon the chassis of a certain 1956 Ford three-quarter-ton truck. That it is necessary to transport the machine to a manhole in the street where the sewer is located. When the machine is thus located at the manhole, the truck is stopped and its motor is turned off, and it thereafter serves only as a platform to support the sewer-cleaning-machine unit while such machine operates as an independent immobile unit. The sectional rod with some type of cutter-head attached is then inserted into the manhole and by reason of the power furnished by the power unit of the machine, is forced into the sewer and rotated along and through the sewer until it reached the next manhole. The

rod and cutterhead are then retrieved at the next manhole and a cleaning brush or other device is put on the end of the rod and the machine then pulls the rod with the cleaning device back through the sewer in a rotating manner by causing the sectional rod to wind onto the drum or reel of the machine. When the machine has fully retrieved the sectional rod, the cleaning operation is completed, the power unit is shut off, the manhole is covered, and the truck is then started and then transports the sewer-cleaning machine to the next manhole. During the time the sewer-cleaning machine is in operation, the truck upon which it is supported is not being managed, controlled, or operated as a motor vehicle.

On August 27, 1959, Huisman transported the sewer-cleaning machine, which was mounted upon the chassis of his 1956 Ford three-quarter-ton truck, to a manhole in a city street in the city of Elkhorn for the purpose of operating the sewer-cleaning machine in and between such manhole and the next manhole connected to the sewer. After Huisman positioned the truck convenient to the manhole so as to efficiently operate the sewer-cleaning machine, he shut off the motor of the truck, placed the truck in neutral, set the emergency brake and left the truck, went to the machine whereupon he caused the sectional rod to be inserted in the manhole, started the power unit of the sewer-cleaning machine in operation and by controlling the same with the controls caused the sectional rod to proceed through the sewer pipe in a revolving fashion until it reached the next manhole in the sewer. Norton's injuries and claim for damages did not arise out of the ownership, operation, maintenance, use, or management and control of the 1956 Ford three-quarter-ton truck, and that the injuries did not occur at the manhole where the sewer-cleaning machine was located, but at the next manhole, which was located several hundred feet away. The affidavit further sets forth that Iowa National for

valuable consideration issued and delivered to Huisman, the insured, a policy of insurance which described the owned automobile as a 1956 Ford three-quarter-ton pickup truck.

Attached to the affidavit were the following three exhibits: A, a brochure of the flexible seweroder, B, a photograph showing the flexible seweroder as it was mounted upon the 1956 Ford three-quarter-ton truck, and C, a copy of the insurance policy of Iowa National.

The record does not contain a counteraffidavit, and the facts in this case are not in dispute.

The applicable provisions of the Iowa National's policy are as follows:

Declaration. Item 1. "Named insured—L. M. Huisman, 810 East Cook Street, Portage, Wisconsin . . . Occupation of the named insured is owner—Sewer-cleaning Service & Equipment Sales."

Declaration. Item 6. "The purposes for which the automobile is to be used are 'pleasure and business,' unless otherwise stated here: Business and pleasure Class 3 and commercial."

Insuring Agreement—"1. Coverage A—Bodily injury liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, *caused by accident and arising out of the ownership, maintenance, or use of the automobile.*" (Italics supplied.)

Insuring Agreement—"IV Automobile defined . . . (a) Automobile . . . the word 'automobile' means: (1) Described automobile—the motor vehicle or trailer described in this policy."

The fleet schedule indorsement described: "1958 Mercury 4-door sedan." (Amendatory indorsement substitutes a 1959 Ford Galaxie) "1956 Ford three-quarter-ton pickup and 1955 Home Made Trailer 4-wheel tandem."

The Mercury, Ford Galaxie, and Home Made Trailer were not involved in this accident.

Condition 25. "Purposes of Use: . . . (b) The term 'commercial' is defined as use principally in the business occupation of the named insured as stated in Item 1, including occasional use for personal, pleasure, family, and other business purposes. . . ."

The definition of "purposes of use" under Condition 25 of the Iowa National policy states: "The term 'commercial' is defined as use principally in the business occupation of the named insured as stated in Item 1." In Item 1, the occupation of the insured is stated as "sewer-cleaning service & equipment sales." It is, therefore, the operation and use of the 1956 Ford three-quarter-ton truck, and not the operation of the sewer-cleaning machine that was insured.

Iowa National contends that sec. 204.30 (4) [1] and sec. 260.11 (1), Stats.,[2] which create a direct liability between an automobile liability insurer and an injured third party and provide for making such insurer a party defendant to the action by an injured third party, do not apply to this action

[1] "204.30 (4)   Any bond or policy of insurance covering liability to others by reason of the operation of a motor vehicle shall be deemed and construed to contain the following conditions: That the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, irrespective of whether such liability be *in praesenti* or contingent and to become fixed or certain by final judgment against the insured, when caused by the negligent operation, maintenance, use, or defective construction of the vehicle described therein, such liability not to exceed the amount named in said bond or policy."

[2] "260.11 (1)  . . . In any action for damages caused by the negligent operation, management, or control of a motor vehicle, any insurer of motor vehicles, which has an interest in the outcome of such controversy adverse to the plaintiff or any of the parties to such controversy, . . . is by this section made a proper party defendant in any action brought by plaintiff . . . on account of any claim against the insured. . . ."

for the reason that the accident must arise out of the negligent ownership, operation, maintenance, or use of a motor vehicle.

In the instant case the injuries suffered by Norton were the result of the independent operation of the sewer-cleaning machine. We determine that the words "ownership, operation, maintenance, or use of a motor vehicle" cannot be reasonably construed to include the accident in question. The accident giving rise to the injuries received by the plaintiff was too remote to be deemed to come within the ordinary meaning of the words "ownership, operation, maintenance, or use of a motor vehicle." [3] We will not sanction a construction of an automobile policy which will extend and enlarge the terms of such policy so as to provide coverage for the purpose of an independent machine unless the policy so specifically provides. It therefore necessarily follows that the order of the trial court denying summary judgment must be reversed and summary judgment granted to the interpleaded defendant dismissing the cross complaint against Iowa National.

*By the Court.*—Order reversed, with instructions to enter judgment dismissing the cross complaint against the interpleaded defendant, Iowa National Mutual Insurance Company.

---

[3] *Smedley v. Milwaukee Automobile Ins. Co.* (1961), 12 Wis. (2d) 460, 467, 107 N. W. (2d) 625.