NEUMANN, Plaintiff, v. WISCONSIN NATURAL GAS COMPANY and others, Defendants: TRAVELERS INDEMNITY COMPANY, Defendant and Appellant: HEUSER, Defendant and Respondent.*

FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff, v. SAME, Defendants: SAME, Defendant and Appellant: SAME, Defendant and Respondent.*

*April 1—April 27, 1965.*

* Motion for rehearing denied, with costs, on June 25, 1965.

For the appellant there was a brief by *Hippenmeyer & Reilly* of Waukesha, and oral argument by *Richard S. Hippenmeyer*.

For the respondent there was a brief by *Love, Davis & McGraw* of Waukesha, and oral argument by *Robert T. McGraw*.

WILKIE, J.   Two issues are presented on this appeal:

First, can appellant be named as a party defendant under the direct-action statutes?

Second, assuming respondent is liable in any degree for damages resulting from the explosion, does the insurance policy cover his liability?

*Direct Action Against Travelers.*

Appellant Travelers Indemnity Company can be named properly as a party in this action only if the "Hy-Hoe" excavation unit is a motor vehicle pursuant to the direct-action statutes, sec. 260.11 (1) and sec. 204.30 (4). The policy contains the usual no-action clause. Paragraph 3 (b) declares that unless otherwise stated, the word "automobile" is deemed to mean "motor vehicle." Subparagraph (3) then eliminates the "Hy-Hoe" from this category by declaring:

"The following described equipment shall be deemed an automobile while towed by or carried on an automobile as above defined solely for purposes of transportation or while being operated solely for locomotion, but not otherwise: if of the non-crawler type, any power crane or shovel, ditch or trench digger; . . ."

Respondent urges that the premium provisions of the policy support the conclusion that the "Hy-Hoe" unit was considered a motor vehicle like the truck itself. A rider to the policy specifically describes the truck and excavating unit. Premiums are extended for four of the seven coverages, namely: "Bodily Injury Liability," "Property Damage Liability," "Comprehensive," and "Collision." A typewritten notation "Truck only" appears in a box labeled "Rate **." The double asterisks indicate that the rate is "Applicable

to such of the Comprehensive, Fire, Theft and Windstorm coverages as may be afforded with respect to the automobile." Respondent contends that the coverage on the truck is thus limited to the four named coverages while the "Hy-Hoe" is afforded protection under all seven categories. Appellant contends that the words "Truck only" indicate that the designated coverage applies only to the truck and that there is no coverage under any category for the "Hy-Hoe." The rider is ambiguous. Resolving ambiguities in favor of the insured, we believe that an entirely different construction is most reasonable, namely, that the "Collision" coverage is limited to the truck while both the truck and the "Hy-Hoe" are covered under the other three named categories. In any event, however, this construction does not mean that the "Hy-Hoe" is deemed an automobile or motor vehicle under the policy.

Even if the policy did not expressly provide that the "Hy-Hoe" was not a motor vehicle, the present facts would nonetheless be controlled by *Smedley v. Milwaukee Automobile Ins. Co.*[1] *Smedley* involved an action for personal injuries caused by the negligent operation of a hydraulic crane which was mounted on a truck chassis. In discussing whether or not the operation of the crane was the operation of a motor vehicle within the meaning of sec. 260.11 (1), Stats., the court said:

"It is undoubtedly true if the unit were being driven on a public street for the purposes of locomotion, it would be considered a motor vehicle. In the record there are several photographs and a lithograph of this unit. Arbitrarily classifying it either as a truck or a hydrocrane without reference to a particular use does not solve the problem. When the unit is in locomotion for the purpose of transporting the crane, it takes on the essential aspects of a motor vehicle for some purposes. However, after the unit arrives at its

[1] (1961), 12 Wis. (2d) 460, 107 N. W. (2d) 625.

destination, the mobile aspect ceases and the crane is operated as an independent immobile unit. The test under the statutes is whether at the time of the accident the unit is being used, managed, controlled, or operated as a motor vehicle in the ordinary meaning of those words. At the time of the accident the unit was stationary, the crane was stabilized, supported, and rendered immobile by outriggers. The unit was not then used as a motor vehicle. Plaintiff was injured by the operation of the crane, not the operation of the truck. We do not believe such use of the unit is within the meaning of the negligent operation, management or control of a motor vehicle as used in sec. 260.11, Stats." [2]

A similar result was reached in *Norton v. Huisman* [3] where the plaintiff was injured by a rod which was connected to a self-powered sewer-cleaning machine which in turn was attached to a truck chassis.

Respondent argues that *Smedley* and *Norton* are not applicable because in the instant case the truck was positioned in the street abutting the Neumann property. The amended complaint contains an allegation to this effect. But *Smedley* and *Norton* both hold that where the negligence is in the operation of independent machines they are not "motor vehicles" within the meaning of sec. 260.11 (1), or sec. 204.30 (4), Stats., and direct action against the insurance company is not permitted. The fact that here the truck may actually have been situated on the street is not decisive where the operation of the independent machine is the alleged cause of the accident. *Norton* implicitly holds to this effect since in that case the truck upon which the sewer-cleaning device was mounted was always parked in the street.

To connect the accident with the operation of the truck as distinguished from the "Hy-Hoe" unit and thus to permit direct action against Travelers, respondent asserted for the

---

[2] Id. at page 466.

[3] (1962), 17 Wis. (2d) 296, 116 N. W. (2d) 169.

first time on oral argument that the gas main could have been severed by the pressure exerted when the truck moved back and forth over the filled-in trench to pack down the dirt. There is no specific allegation to this effect in the complaints or in the stipulated facts. Even if the plaintiffs were permitted to amend their complaints to make this allegation, if that indeed is their theory of one alternative way in which the accident occurred, any such negligence on the part of Heuser would not be covered by the policy as hereinafter discussed and thus joinder of Travelers would be unavailing. The crucial question, whether direct action against Travelers is permitted or not, is whether the Travelers' policy covered the alleged negligence of respondent.

## Policy Coverage.

At oral argument counsel for both sides indicated that even if Travelers were not a proper party defendant they desired to have the coverage question resolved on this appeal. Thus, any prematurity in resolving the coverage question has been waived.

Involved is an ordinary comprehensive liability policy which covered damages Heuser became obligated to pay as the result of personal injury (Coverage A) or property damage (Coverage C) caused by an accident. Travelers' liability was to be subject to the "exclusions, conditions and other terms" of the policy and if there was no entry in a premium space, insurance was not to be "afforded with respect to the coverage opposite each premium space." No premium was charged for "aggregate products" under Coverage A (bodily injury) or Coverage C (property damage— except automobile). Coverage for "Products (Including Completed Operations)" was expressly excluded by schedule 1 (d) of the declarations.

The term "products hazard" was defined under paragraph 3 (g) (2) of "Conditions" as including:

*"operations, if the accident occurs after such operations have been completed or abandoned* and occurs away from premises owned, rented or controlled by the named insured; *provided, operations shall not be deemed incomplete because improperly or defectively performed* or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations." (Emphasis added.)

In essence appellant contends that since the accident occurred on November 18th, sixteen days after the work had been completed, coverage is excluded by the express provisions of paragraph 3 (g) (2) of Conditions because the operations had been completed. Respondent contends that there is coverage under two alternative theories: (1) The accident occurred on November 2d or 3d (while the injury occurred on November 18th), Heuser's liability grows out of negligence attributable to him that occurred at that earlier time, his operations were not completed at the time and, therefore, the exclusion provisions of the policy do not apply; or (2) the products-hazard exclusion provisions do not apply since neither paragraph 3 (g) (1) nor (2) contemplates the construction work performed by Heuser.

The coverage question raised here is one of first impression in this state. One of the relevant decisions in other jurisdictions is the Connecticut case of *Smedley Co. v. Employers Mut. Liability Ins. Co.*[4] In that case the insured operated

---

[4] (1956), 143 Conn. 510, 123 Atl. (2d) 755.

a warehouse and was sued when the release to a deliveryman of a wrong product from storage subsequently caused the ruin of a large quantity of ice cream. The liability policy specifically excluded coverage for the products hazard. Except for the additional proviso present in the instant case that the operations were not to be deemed incomplete when defectively performed, the products-hazard definition in the policy was virtually identical to the definition found in Travelers' policy. In holding that any liability on the part of the insured for delivering the wrong product was not covered by the policy, the court said:

"Although both complaints alleged negligence on Smedley's part in releasing the wrong product at its premises in New Haven, both further alleged that no injury to property—that is, no accident to property—occurred until the wrong product was used at New London by Mohegan in the manufacture of ice cream. The injury took place long after the operations of Smedley had ended and at a place away from its premises." [5]

and

"Since the complaints in the actions brought against Smedley showed on their face that the accident to property arose out of a 'products hazard,' as defined in the second paragraph of the definition, and that Smedley's activities and services had been completed at the time the accident occurred, the defendant was under no duty to defend on behalf of Smedley." [6]

In *Berger Brothers Electric Motors v. New Amsterdam Casualty Co.*[7], a New York case relied on by the Connecticut court in *Smedley,* a contractor was sued when motors he improperly installed in incubators subsequently (nearly two months later) caused damage to a large number of turkey

[5] Id. 143 Conn. at page 517, 123 Atl. (2d) at page 759.
[6] Ibid.
[7] (1944), 293 N. Y. 523, 58 N. E. (2d) 717.

eggs. The contractor had two insurance policies, one of which did not apply to accidents "occurring after operations have been completed or abandoned." The court, in ruling against coverage, said:

"When the plaintiff completed its work and removed all of its tools, equipment and materials from the Chillson farm on December 23, 1940, no accident had occurred. Nothing had happened. There was no mishap whatever. Not until the eggs were placed in the incubators did any accident occur, and if we assume, as the plaintiff contends, that the accident did occur on February 20, 1941, 'when the cause and effect merged into a consummated accident,' this accident resulted from defective workmanship after the work of installation was completed. This must be so unless we yield to the plaintiff's contention and hold that the work was not completed at that time because the wiring was defective; but so to construe the language of the excluding clauses would deprive them of all meaning and purpose. By these clauses the parties intended to limit the casualty company's liability to accidents occurring during the progress of the work and to exclude liability for accidents occurring, after the work was completed, as the result of defective workmanship. If that be not the meaning of the plain language used, the insurer would remain liable indefinitely for defective workmanship upon the theory that defective work is never complete until the defect is discovered and corrected. But this is a risk which the parties intended to exclude from the coverage of the policy, and we cannot read these policies as intended to cover such risks, for the language is plain and unambiguous." [8]

Other cases involving similar completed operation provisions in the disputed policy are in accord with *Berger* and *Smedley*.[9]

---

[8] Id. 293 N. Y. at page 527, 58 N. E. (2d) at page 718.

[9] *Employers Ins. Co. of Alabama v. Rives* (1953), 38 Ala. App. 411, 87 So. (2d) 646; *Smith v. United States Fidelity & Guaranty Co.* (1942), 142 Neb. 321, 6 N. W. (2d) 81; *Crook v. Kalamazoo Sales & Service, Inc.* (1954), 82 R. I. 387, 110 Atl. (2d) 266; *Baker v. Maryland Casualty Co.* (1948), 73 R. I. 411, 56 Atl. (2d) 920; *Butler v. United States Fidelity & Guaranty Co.* (1955), 197

Relying on *Kendrick v. Mason,*[10] respondent Heuser counters that the injury and not the accident arose on November 18th, that the accident actually occurred on November 2d when the gas line was allegedly weakened, and that accordingly even if paragraph 3 (g) (2) is considered applicable the tortious accident occurred before operations were completed. But *Kendrick* does not stand for this proposition. The decision of the court recognized that the "accident," within the meaning of the policy, took place when the explosion occurred.[11] This is consistent with the general rule.[12]

The court concluded that there was coverage in *Kendrick* because of ambiguity in the policy provisions. The contractor had punctured a gas main while digging trenches for a sewer system. Sometime later an explosion occurred which caused both personal injuries and property damage. The contractor had a comprehensive general liability policy which did not apply to "Aggregate Products" or "Products Hazard" liabilities. The definition of "operations" under

Tenn. 614, 277 S. W. (2d) 348; *Foster Trailer Co. v. United States Fidelity & Guaranty Co.* (1950), 190 Tenn. 181, 228 S. W. (2d) 107; *Hutchinson Gas Co. v. Phoenix Indemnity Co.* (1939), 206 Minn. 257, 288 N. W. 847; *Pan American Ins. Co. v. Cooper Butane Co.* (1957), 157 Tex. 102, 300 S. W. (2d) 651; *Hardware Mut. Casualty Co. v. Bloomberg* (1952), 72 Ohio L. Abs. 550, 135 N. E. (2d) 698; *Standard Accident Ins. Co. v. Roberts* (8th Cir. 1942), 132 Fed. (2d) 794; *U. S. Sanitary Specialties Corp. v. Globe Indemnity Co.* (7th Cir. 1953), 204 Fed. (2d) 774; *Clauss v. American Automobile and Ins. Co.* (D. C. Pa. 1959), 175 Fed. Supp. 641.

[10] (1958), 234 La. 271, 99 So. (2d) 108.

[11] Id. 234 La. at page 295, 99 So. (2d) at page 117.

[12] See 1 Words and Phrases, p. 551; 29A Am. Jur., Insurance, p. 313, sec. 1167; Anno. 57 A. L. R. (2d) 1379; *Commercial Contractors Corp. v. American Ins. Co.* (1964), 152 Conn. 31, 202 Atl. (2d) 498. In *Clark v. London & Lancashire Indemnity Co.* (1963), 21 Wis. (2d) 268, 283, 124 N. W. (2d) 29, this court indicated acceptance of the general rule by quoting a definition of accident as meaning "injuries caused by a sudden and identifiable event with respect to both location and time."

"Products Hazard" was identical to the one in the present case. "Products Hazard" was also defined in terms of "products" as meaning:

"The handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the Named Insured, . . . if the accident occurs after the Insured has relinquished possession . . . ." [13]

Although the precise language is different, the policy in the present case also contains substantially the same alternative definition of "Products Hazard."

The insurance company sought to avoid liability, as does Travelers here, under the operations portion of the "Products Hazard" definition. Finding the policy terms unclear, the court decided that:

" 'The reference to the accident occurring after the operations have been completed and abandoned at or away from premises owned, rented or controlled by the insured means nothing more than the accidents occurring by reason of handling of products or goods, after any agreement to sell, rent or deliver the goods has been completed or the goods have been abandoned.' " [14]

and further that:

"We are constrained to conclude that the liability exclusion provisions of the policy herein issued by the defendant to Mason are inapplicable herein for the reason that Mason handled no products but was engaged solely as a contractor and the exclusion provisions of the policy have no application to the construction work performed by him. The policy was issued to fully protect Mason against liability for acts of negligence committed by him during his performance of the contract. The tort which was the proximate cause of the

[13] *Kendrick v. Mason, supra,* footnote 10, at page 115.
[14] Id. at page 116.

damages sustained by plaintiff was in fact and in law committed during the performance of the construction contract. Both the accident and the injuries resulting therefrom were brought about not from the completed and accepted sewer system but from the direct result of the acts of negligence committed during its construction. The policy covering said accidents for which premiums were charged was then in full force and effect; and the conclusion is inescapable that the insurer is therefore liable in solido with its insured, Mason." [15]

Other courts, faced with similar facts and policy provisions, have adopted the rationale illustrated in *Kendrick*.[16]

The two interpretations of similar policy provisions are irreconcilable. Moreover, the cases supporting each view cannot be readily distinguished on their facts. The *Kendrick* decision not only ignores the express language of the "operations" definition under "Products Hazard" but also renders that whole definition of no effect when considering the activities as here of a construction contractor. The "operations" definition of the subject policy contemplates an insured who is engaged in operations that are something more than the handling of goods. We think there is nothing ambiguous about the policy provisions in this respect. Thus, the *Smedley-Berger* rationale not only appears to be the majority view but the soundest. The insurance contract covered liability for injuries or damages arising out of accidents that occurred before the operations of the exca-

---

[15] Ibid.

[16] *King v. Mason* (1958), 234 La. 299, 99 So. (2d) 117; *Clark v. Hacker* (1956), 345 Mich. 751, 76 N. W. (2d) 806; *McAllister v. Century Indemnity Co. of Hartford* (1953), 24 N. J. Super. 289, 94 Atl. (2d) 345; *Reed Roller Bit Co. v. Pacific Employers Ins. Co.* (5th Cir. 1952), 198 Fed. (2d) 1; *Nielson v. Travelers Indemnity Co.* (D. C. Iowa 1959), 174 Fed. Supp. 648, affirmed (8th Cir. 1960), 277 Fed. (2d) 455; *Hercules Co. v. Royal Indemnity Co.* (D. C. N. Y. 1959), 171 Fed. Supp. 746; *Heyward v. American Casualty Co.* (D. C. S. C. 1955), 129 Fed. Supp. 4.

vating contractor had been completed on November 3d; that since this accident did not occur until November 18th, the operations had been completed and there was no coverage. Coverage, limited as it always must be, results from contract and the parties simply did not contract to cover this risk.

*By the Court.*—Order reversed.

CURRIE, C. J.  (*concurring in part, dissenting in part*).

While I concur in that part of the court's opinion which holds that appellant Travelers Indemnity Company cannot be named as a party defendant under our direct-action statutes under the instant facts, I must respectfully dissent from that part of the opinion which holds there is no coverage under appellant's policy. I would follow the precedent of *Kendrick v. Mason* (1958), 234 La. 271, 99 So. (2d) 108. Here the property of the gas company, the gas main, was actually damaged by the "Hy-Hoe" excavating operations which set in motion the chain of causation which later resulted in the explosion. I cannot see how products liability coverage would be applicable to this type of situation. Here the product was the trench which was excavated and filled. Nothing later happened with respect to that after completion of the work to cause the explosion.

I am authorized to state that Mr. Justice FAIRCHILD and Mr. Justice BEILFUSS join in this opinion.