SCHMIDT, Plaintiff and Appellant, v. LUCHTERHAND and another, Defendants and Appellants: THRESHERMEN'S MUTUAL INSURANCE COMPANY, Defendant and Respondent: P. A. RADOCY & SONS, INC., Defendant.

*No. 297. Argued January 3, 1974.——Decided February 5, 1974.*
(Also reported in 214 N. W. 2d 393.)

For plaintiff-appellant there was a brief by *Schellinger & Doyle, S. C.,* attorneys, and *Lee F. Calvey* of counsel, all of Milwaukee, and oral argument by *Mr. Calvey.*

For defendant-appellant American Family Insurance Company there was a brief by *Fulton, Menn & Nehs, Ltd.,* attorneys, and *Peter S. Nelson* of counsel, all of Appleton, and oral argument by *Mr. Nelson.*

For defendant-appellant Roger Luchterhand there was a brief by *Bradford & Gabert* of Appleton, and oral argument by *Stanley Gabert.*

For the respondent Threshermen's Mutual Insurance Company there was a brief by *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee, and oral argument by *John A. Kluwin.*

CONNOR T. HANSEN, J. This appeal presents the following issues:

1. Whether the American Family Mutual Insurance Company's policy afforded coverage to this incident?

2. Whether Threshermen's Mutual Insurance Company's policy afforded coverage to this incident?

3. Is the issue of waiver and estoppel properly before this court on this appeal?

*American Family policy.*

On this appeal, American takes the position that their policy of insurance did not cover the use of the hoist at the time of the accident.

In 1967, Luchterhand purchased a business from Gary Rogenbach, the nature of which was erecting and servicing advertising signs. The purchase included a 1962 GMC truck. Attached to the truck was the Mighty Lift Hoist involved in this incident. The hoist was mounted in the middle of the rear portion of the truck. The value of the hoist was approximately three times the value of the truck.

When Luchterhand purchased the business, he consulted Eugene Zeuske, an insurance agent in Shawano, as to the type of insurance that had previously been carried on the vehicle. Zeuske had been in the insurance business a number of years, and knew both Rogenbach, the former owner, and Luchterhand. Rogenbach had carried a standard automobile policy on the truck, issued by American. Zeuske arranged to have the same type of policy issued to Luchterhand. Under this policy of

insurance, American provided automobile liability insurance with a $25,000 limit.

Shortly thereafter, Luchterhand also purchased a general liability policy, with limits of $10,000, from Threshermen's. This insurance contract was also purchased through Zeuske.

The accident involving Schmidt occurred on December 19, 1969, and it is admitted that both policies were in full force and effect at this time.

Part I of this policy provided in pertinent part, as follows:

"**1 Coverages A and B—Bodily Injury and Property Damage Liability**

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"Coverage A—*bodily injury,* sickness or disease, including death at any time resulting therefrom, sustained by any person, *caused by accident and arising out of the* ownership, maintenance or *use of the automobile;*

". . . ." (Emphasis supplied.)

Therefore, in considering the appeal of American, it is necessary to determine whether the injuries sustained by the plaintiff were caused by an accident arising out of the use of the 1962 GMC truck.

The boom of the hoist is raised by means of hydraulic power supplied by a compression unit with a 12-volt car starter and centrifugal pump. The starter for the compression unit derives its power from the truck battery. The operator stands on the bed of the truck and presses the starter and this raises the boom to the desired position by means of hydraulic fluid. Once the boom has been raised to its desired position the starter is released and there is no more electrical energy or any source of mechanical energy provided by the truck. This very limited use of the truck's battery is the only connection the hoist has with the truck unit. With the boom ex-

tended, objects (trusses) can be moved by use of a winch and cable apparatus which is operated entirely by hand. A metal cable extends through the hoist, and by attaching a crank handle to various winch points at the lower end of the boom, the operator utilizes various size gears to raise or lower objects of different sizes.

On the day of the accident, Luchterhand had driven his truck to the construction site and positioned it in such a way that the boom could raise the various trusses into place. Luchterhand had turned off the engine of his truck some two or three hours before the accident occurred. The work of raising the trusses was accomplished by means of manually operating the hoist. Thus, the truck was not being used as a vehicle at the time of the accident. The only thing being used was the hoist, and the accident resulted from the use of that device.

There are a number of factors which lead us to conclude that the injuries sustained by the plaintiff were not caused by an accident arising out of the use of the 1962 truck, and, therefore, the automobile liability insurance contract issued by American did not afford coverage to the plaintiff.

The basic policy issued by American is identified as a national standard automobile policy.

Part IV of the American Family policy provided a description of what the parties intended by the use of the term *automobile*. It said in pertinent part:

"**IV Automobile Defined, Trailers, Farm Machinery and Equipment, Private Passenger Automobile, Two or More Automobiles, Including Automatic Insurance**

"**a. Automobile.** Except with respect to coverage Cb. and except where stated to the contrary, the word 'automobile' means:

"(1) **Described Automobile**—the motor vehicle or trailer described in this policy;

"(2) . . .

"(3) . . .

"(4) . . .
"(5) . . .

"The word 'automobile' also includes under coverages D, E, F, G and H its equipment and other equipment permanently attached thereto."

The motor vehicle described in the policy is an "8 62 GMC TRUC 850."

The policy expressly states that the definition of the word automobile is expanded to include the equipment "permanently attached thereto" only for the purposes of coverage under D, E, F, G and H. However, none of the coverage provided by paragraphs D, E, F, G and H applies to personal injury claims by others. Paragraphs D, E, F and G apply to collision, fire, theft and other damage to the vehicle. Paragraph H covers emergency road service. Thus, the policy did not intend to provide absolute coverage for personal injury caused by the equipment permanently attached to this motor vehicle.

As stated in *Westerman v. Richardson* (1969), 43 Wis. 2d 587, 592, 168 N. W. 2d 851:

"Of course, in interpreting and construing the policy, the ultimate objective is to ascertain the true intention of the parties. . . ." (*Citing Home Mut. Ins. Co. v. Insurance Co. of North America* (1963), 20 Wis. 2d 48, 51, 121 N. W. 2d 275; *Inter-Insurance Exchange v. Westchester Fire Ins. Co.* (1964), 25 Wis. 2d 100, 104, 130 N. W. 2d 185.)

Moreover, a practical construction is most persuasive in ascertaining the intention of the parties. *Inter-Insurance Exchange v. Westchester Fire Ins. Co., supra,* page 104; *Home Mut. Ins. Co. v. Insurance Co. of North America, supra,* pages 51, 52. In *McPhee v. American Motorists Ins. Co.* (1973), 57 Wis. 2d 669, 676, 205 N. W. 2d 152, this court recently explained as follows:

". . . An insurance policy must be construed in accordance with the principle that the test is not what the insurer intended its words to mean but what a rea-

sonable person in the position of an insured would have understood the words to mean. While this court will not, under the guise of strict construction against the insurer, rewrite a policy, whatever ambiguity exists in a policy of liability insurance must be resolved in favor of the insured."

The described automobile in the policy was the "motor vehicle" listed in the policy. Words used in insurance contracts ". . . are to be given the common and ordinary meaning which they have in the minds of the average layman. . . ." *Solberg v. Metropolitan Life Ins. Co.* (1971), 50 Wis. 2d 746, 753, 185 N. W. 2d 319, *citing Mittelsteadt v. Bovee* (1960), 9 Wis. 2d 44, 100 N. W. 2d 376, and *Charette v. Prudential Ins. Co.* (1930), 202 Wis. 470, 232 N. W. 848. Item 2 in the policy simply referred to a "[19]62 GMC TRUC" and identified it by model number. Part IV of the policy provided that this described "motor vehicle" was the automobile receiving coverage. An ordinary meaning of the term "motor vehicle" as it is applied to this 1962 truck would not include the permanently attached hoist as it was being used at the time of the accident. *Neumann v. Wisconsin Natural Gas Co.* (1965), 27 Wis. 2d 410, 134 N. W. 2d 474; *Smedley v. Milwaukee Automobile Ins. Co.* (1961), 12 Wis. 2d 460, 107 N. W. 2d 625; and *Norton v. Huisman* (1962), 17 Wis. 2d 296, 116 N. W. 2d 169, are persuasive authority that referring to this 1962 truck as a motor vehicle would not be commonly understood as indicating an intent to include the hoist as it was being used in the instant case.

The plaintiff, in *Smedley v. Milwaukee Automobile Ins. Co., supra,* had sustained injuries caused by the negligent operation of a hydraulic crane which was mounted on a Mack truck and was being used to raise and lower steel girders into place. The Milwaukee Automobile Insurance Company had issued an automobile liability policy to the insured who had injured the plain-

tiff with his crane. However, the insurance company claimed that it could not be made a party under the direct-action statute (sec. 260.11, Stats.) because the crane at the time of the accident was stationary, was not used for the purpose of locomotion, and was not a motor vehicle. The court explained the nature of the crane as follows:

"The hydraulic crane is mounted on a special base on a Mack truck chassis for the purpose of locomotion but when in use the unit is stationary. The crane has its own power separate from the motor of the truck and consists of the hydraulic mechanism for lowering and raising a boom and its line. The boom is some 35 feet long and I beams are lifted by the process of placing a steel cable choker around the beam, fastening the choker to the hook of the line, and raising and swinging the boom. When used for this work the crane is stabilized and made immobile by the use of four outriggers on its platform." *Smedley, supra,* page 462.

The court explained its resolution of the issue in the following manner:

"The question here is whether the operation and control of the crane at the time of the accident was the operation and control of a motor vehicle within the meaning of the statute. It is undoubtedly true if the unit were being driven on a public street for the purposes of locomotion, it would be considered a motor vehicle. In the record there are several photographs and a lithograph of this unit. *Arbitrarily classifying it either as a truck or a hydrocrane without reference to a particular use does not solve the problem. When the unit is in locomotion for the purpose of transporting the crane, it takes on the essential aspects of a motor vehicle for some purposes.* However, after the unit arrives at its destination, the mobile aspect ceases and the crane is operated as an independent immobile unit. *The test under the statutes is whether at the time of the accident the unit is being used, managed, controlled, or operated as a motor vehicle in the ordinary meaning of those words.* At the time of the accident the unit was stationary, the crane was stabilized, supported, and rendered immobile by outrig-

gers. The unit was not then used as a motor vehicle. Plaintiff was injured by the operation of the crane, not the operation of the truck. We do not believe such use of the unit is within the meaning of the negligent operation, management or control of a motor vehicle as used in sec. 260.11, Stats." (Emphasis supplied.) *Smedley, supra,* pages 466, 467.

The court concluded in *Smedley, supra,* pages 468, 469, that the plaintiff's cause of action for damages ". . . was not for the negligent operation, management or control of a motor vehicle but for damages caused by the operation of a crane. . . ."

More recently, in *Neumann v. Wisconsin Natural Gas Co., supra,* this court held that the use of a "Hy-Hoe" excavator mounted on a special base on the chassis of a 1955 Chevrolet truck was not the use of a motor vehicle within the meaning of secs. 260.11(1) and 204.30 (4), Stats., the direct-action statutes. In *Neumann, supra,* page 412, the nature of the unit was explained as follows:

". . . The 'Hy-Hoe' unit was completely self-powered by means of a hydraulic mechanism which operated the scoop. The truck was used merely for transportation and was shut off once the unit was in proper position at a jobsite. When in use, the 'Hy-Hoe' was stabilized and immobilized by two outriggers which extended from its platform."

It was held in *Neumann, supra,* page 415, that:

"Even if the policy did not expressly provide that the 'Hy-Hoe' was not a motor vehicle, the present facts would nonetheless be controlled by *Smedley v. Milwaukee Automobile Ins. Co.* . . ."

*Smedley v. Milwaukee Automobile Ins. Co., supra,* and *Neumann v. Wisconsin Natural Gas Co., supra,* both concluded that the respective crane and backhoe excavator in those cases were not being used or operated as a motor vehicle within the ordinary use of those terms as they are generally understood.

In *Norton v. Huisman, supra,* page 300, this court held that injuries caused by a sewer-cleaning machine with an independent power supply, mounted on the back of a truck, which was insured by the defendant insurer, did not arise out of ". . . 'the ownership, maintenance, or use of the automobile,'" or truck covered by the insurance policy. In *Norton,* the sewer-cleaning machine, mounted on the chassis of a 1956 Ford three-quarter-ton truck, consisted of a reel with a sewer rod coupled to a power unit. It was self-contained and did not depend in its operation upon outside power, nor, while operating, upon the ability of the truck to move forward or backward. The machine was transported from manhole to manhole by the truck. When it reached a manhole the truck would be stopped, the motor turned off, and the emergency brake set. After the machine had completed its operation, it moved to the next manhole. The policy language in *Norton* regarding liability coverage for bodily injury was the same as that found in the American Family policy in this case. The policy in *Norton* also defined automobile in the same manner as does the policy of American in the instant case. *Norton, supra,* page 300. The motor vehicle with which the court was concerned was described in the policy as simply a "1956 Ford three-quarter-ton pickup"—*Norton, supra,* page 300. The court concluded that it was the operation and use of the truck and not the operation of the sewer-cleaning equipment that had been insured.

"In the instant case the injuries suffered by Norton were the result of the independent operation of the sewer-cleaning machine. We determine that the words 'ownership, operation, maintenance, or use of a motor vehicle' cannot be reasonably construed to include the accident in question. The accident giving rise to the injuries received by the plaintiff was too remote to be deemed to come within the ordinary meaning of the words 'ownership, operation, maintenance, or use of a motor vehicle.' *We will not sanction a construction of an automobile*

*policy which will extend and enlarge the terms of such policy so as to provide coverage for the purpose of an independent machine unless the policy so specifically provides. . . ."* (Emphasis supplied.) *Norton, supra,* page 302.

In *Smedley, supra,* the crane, and in *Neumann, supra,* the backhoe, were stabilized by outriggers when they were in use. In *Norton, supra,* the sewer-cleaning machine, and in the instant case, the hoist, were stabilized by the safety brake on the truck while the equipment was in use. We do not deem this to be a significant distinction. Luchterhand testified that outriggers were not required because of the angle at which he used the boom on the hoist. In *Norton,* the truck moved the sewer-cleaning machine from manhole to manhole and the brake on the truck was set when the equipment was in use. In this case, the brakes on Luchterhand's truck were set while the hoist was in use and the truck served only to move the hoist into position.

Also, we do not place great significance on the fact that the boom of the hoist was initially raised into position by power derived in part from the battery of the truck. The truck battery was used *only initially* to activate the hydraulic equipment to raise the boom of the hoist. The hoist had been in place for over two hours before the accident. Under the facts of this case, such incidental use of the truck battery does not bring the hoist within the use of the automobile provisions of the American automobile liability insurance contract.

*Threshermen's policy.*

Plaintiff, Schmidt, and defendant, Luchterhand, have appealed from that portion of the amended judgment dismissing the action as to Threshermen's.

Part I of this policy provided as follows:

**"I.  Coverage A—Bodily Injury Liability**
**"Coverage B—Property Damage Liability**
"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

> A.  bodily injury or
> B.  property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**
*"This insurance does not apply:*

(a)  ...
(b)  *to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of*
"(1)  *any automobile* or aircraft *owned or operated by* or rented or loaned to *the named insured,* or
"(2)  any other automobile or aircraft operated by any person in the course of his employment by the named insured;

but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to the named insured; ...." (Emphasis supplied.)

Therefore, coverage in this case was provided unless it can be said that this accident arose out of the use of an "automobile."

In the "Definitions" section of this policy, it is provided:

"When used in this policy (including endorsements forming a part hereof) :

" 'automobile' means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), *but does not include mobile equipment;*

" . . .

" 'mobile equipment' means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, *or* (2) maintained for use exclusively on premises owned by or rented to the *named insured,* including the ways immediately adjoining, *or* (3) designed for use principally off public roads, *or* (4) *designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle:* power cranes, shovels, loaders, diggers and drills, concrete mixers (other than the mix-in-transit type) ; graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;" (Emphasis supplied.)

Threshermen's policy provides that "mobile equipment" is not included within the definition of automobile for the purpose of this exclusion. Threshermen's argues that this unit could not be considered "mobile equipment" under the policy because it fails to satisfy the first requirement, that it is ". . . (1) not subject to motor vehicle registration." It is admitted the truck was subject to registration and in fact was registered. However, the four requisites for "mobile equipment" listed in this definition are alternative definitions. The presence of the article "or" after the first three indicates that any land vehicle which satisfied *one* of these requirements would be considered "mobile equipment" for purposes of this policy. At least subdivision four is applicable to the instant situation. The hoist, as it was being used, was,

by the terms of the policy, included in the term land vehicle. Thus, the truck and the hoist, as they were being used at the time of the accident, are considered *one unit* under *this* policy.

Luchterhand testified at trial that the body of this truck was designed for a crane or a boom.

The automobile exclusion in this policy did not apply to this accident because this accident did not arise out of the use of an automobile as that term is defined in the policy.

Finally, counsel for Threshermen's Mutual Insurance Company said at trial and on appeal that there definitely was coverage in this case by one of these policies and that if American Family did not cover this accident, then the general liability policy issued by Threshermen's did. As previously indicated, American Family did not provide coverage; therefore, counsel for Threshermen's has conceded that the general liability policy did cover the accident.

## *Estoppel.*

Plaintiff, Schmidt, and Luchterhand also argue that Threshermen's is estopped from denying coverage because it unnecessarily delayed asserting its policy defense, and they are thereby prejudiced.

Also, at the conclusion of the trial, Judge PARNELL permitted Luchterhand to amend the pleadings to allege waiver and estoppel to both American and Threshermen's. Counsel for American advised the court that it did not wish to have the court decide the issue of waiver and estoppel on the record presently before it. The trial court acceded to this request by finding that:

". . . The issue of estoppel is not presented at the present proceedings before the Court and will not be considered."

However, the subsequent amended judgment entered by Judge MYSE makes no reference whatever to this issue and dismisses all actions against Threshermen's, including all cross complaints. Therefore, the issue has not been litigated or determined by a trial court. We do not deem it appropriate to determine the issue on the basis of the record now before us. We do observe, however, that the record contains a nonwaiver agreement running from Luchterhand to American.

The accident occurred December 19, 1969. Luchterhand promptly notified agent Zeuske of the incident. It appears that it was not until well into 1970 before either American or Threshermen's notified Luchterhand that they were denying him coverage.

Both the plaintiff, Schmidt, and Luchterhand maintain that they have been prejudiced by the insurance companies' delays, and they ought to have the opportunity to have this issue decided by a trial court. We agree.

*By the Court.*—Judgment of the trial court is reversed, and the cause remanded for further proceedings consistent with this opinion.