**2023 WI APP 47**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2022AP1346

Complete Title of Case:

ESTATE OF KEVIN WIEMER AND ANGELA Y. WIEMER,

　　PLAINTIFFS-RESPONDENTS,

SECURA INSURANCE COMPANY,

　　INVOLUNTARY-PLAINTIFF-RESPONDENT,

　　V.

ZEELAND FARM SERVICES, INC.,

　　DEFENDANT-CO-APPELLANT,

ATLANTIC CARRIERS, INC., BLACKHOOF TRUCKING LLC,
SCOTTSDALE INDEMNITY COMPANY,

　　DEFENDANTS-APPELLANTS,

ABC INSURANCE COMPANY AND DEF INSURANCE COMPANY,

　　DEFENDANTS.

| | |
|---|---|
| Opinion Filed: | August 8, 2023 |
| Submitted on Briefs: | April 5, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:      On behalf of the defendants-appellants, the cause was submitted on the briefs of *Charles W. Kramer* of *Hennessy & Roach, P.C.*, Milwaukee.

Respondent
ATTORNEYS:      On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Peter A. Stanford* of *Stanford Law Offices, S.C.*, Milwaukee.

# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 8, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1346**

Cir. Ct. No. **2022CV21**

STATE OF WISCONSIN

IN COURT OF APPEALS

---

ESTATE OF KEVIN WIEMER AND ANGELA Y. WIEMER,

PLAINTIFFS-RESPONDENTS,

SECURA INSURANCE COMPANY,

INVOLUNTARY-PLAINTIFF-RESPONDENT,

V.

ZEELAND FARM SERVICES, INC.,

DEFENDANT-CO-APPELLANT,

ATLANTIC CARRIERS, INC., BLACKHOOF TRUCKING LLC, SCOTTSDALE INDEMNITY COMPANY,

DEFENDANTS-APPELLANTS,

ABC INSURANCE COMPANY AND DEF INSURANCE COMPANY,

DEFENDANTS.

---

APPEAL from an order of the circuit court for Rusk County: STEVEN P. ANDERSON, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1 STARK, P.J. Kevin Wiemer died after falling into a gravity-operated hopper trailer that was attached to a semi-tractor and being smothered by the trailer's cargo of corn gluten. More than two years later, Wiemer's surviving spouse, Angela Wiemer, and his estate (collectively, "the Estate") filed the instant wrongful death action against Zeeland Farm Services, Inc., Atlantic Carriers, Inc., Blackhoof Trucking LLC, and Scottsdale Indemnity Company (collectively, "the Defendants").

¶2 The Defendants moved for judgment on the pleadings, and their motion was subsequently converted to a motion for summary judgment. The Defendants argued that the Estate's complaint was untimely under WIS. STAT. § 893.54(2m) (2021-22),[1] which provides a two-year statute of limitations for actions "brought to recover damages for death caused by the wrongful act, neglect, or default of another and arising from an accident involving a motor vehicle." The circuit court denied the Defendants' summary judgment motion. The court agreed with the Defendants that the tractor-trailer that hauled the corn gluten was a "motor vehicle" for purposes of § 893.54(2m). The court concluded, however, that Weimer's accident did not "involv[e]" a motor vehicle. *See id.*

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶3      The Defendants now appeal, arguing that the circuit court erred by denying their summary judgment motion.[2]  We agree.  While the court correctly concluded that the tractor-trailer was a "motor vehicle" for purposes of WIS. STAT. § 893.54(2m), the court erred by concluding that Wiemer's accident did not involve a motor vehicle.  We also reject the Estate's alternative argument that Wiemer's death did not "aris[e] from" an accident involving a motor vehicle.  *See id.*  We therefore reverse the order denying the Defendants' summary judgment motion, and we remand for the circuit court to grant that motion and dismiss the Estate's claims.

## BACKGROUND

¶4      The material facts regarding Wiemer's death are undisputed, at least as they relate to the Defendants' statute of limitations defense.  On September 16, 2019, the River Country Co-Op ("the Co-Op") placed an order to purchase 25.17 tons of pelletized corn gluten from Zeeland Farm Services.  The corn gluten was to be delivered to the Co-Op's facility in Sheldon, Wisconsin, on September 19.  Zeeland Farm Services hired Atlantic Carriers to transport the corn gluten from Clinton, Iowa, to the Co-Op's facility.  Atlantic Carriers then hired Blackhoof Trucking to load, transport, and unload the corn gluten.

¶5      Blackhoof Trucking transported the corn gluten to the Co-Op's facility in a gravity-operated hopper trailer that was attached to a semi-tractor.  The semi-tractor was self-propelled, but the hopper trailer was not.  The semi-tractor and trailer were licensed separately.

¶6      The tractor-trailer arrived at the Co-Op's facility on September 19, 2019.  The driver maneuvered the tractor-trailer so that the trailer's gravity feed bin

---

[2] This court granted leave to appeal a nonfinal order on September 12, 2022.

3

was positioned over a conveyor pit that was designated to receive the corn gluten. The intention was that a door in the bottom of the trailer would be opened, and gravity would cause the corn gluten to drain out of the trailer into the pit below. Aside from positioning the trailer over the conveyor pit, the trailer did not require the use of the semi-tractor or the tractor's motor to unload the corn gluten.

¶7 Unfortunately, the corn gluten had "bridged" during transport, meaning that it had compacted so that it would not drain out of the bottom of the trailer. As a result, Wiemer, who was a Co-Op employee, climbed on top of the trailer and attempted to break the bridge. Tragically, while doing so, Wiemer fell into the body of the trailer, became entrapped in the flow of corn gluten moving toward the bottom of the trailer, and was smothered.

¶8 The Estate filed the instant wrongful death lawsuit against the Defendants on March 18, 2022—more than thirty months after Wiemer's death. The Estate later filed an amended complaint, which alleged that the Defendants were negligent by "[l]oading, transporting and unloading" the corn gluten with a gravity-operated hopper trailer, rather than a live-bottom trailer; by failing to ensure that the corn gluten would not bridge during loading, transport, and unloading; by failing to ensure that the corn gluten would "safely unload" upon delivery; and by allowing individuals other than their own agents and employees onto the trailer to "break" the bridged corn gluten.

¶9 The Defendants filed a motion for judgment on the pleadings, which was converted to a motion for summary judgment when both sides filed affidavits in support of their respective positions. *See* WIS. STAT. § 802.06(2)(b). The Defendants argued that the Estate's lawsuit was untimely under WIS. STAT. § 893.54(2m) because it was not filed within two years of Wiemer's death. In

4

response, the Estate asserted that § 893.54(2m) was inapplicable because Wiemer's death did not arise from an accident involving a motor vehicle.

¶10    In an oral ruling, the circuit court agreed with the Defendants that the tractor-trailer at issue in this case qualified as a motor vehicle for purposes of WIS. STAT. § 893.54(2m). The court agreed with the Estate, however, that Wiemer's accident did not "involv[e]" a motor vehicle. *See id.* The court concluded that the statutory phrase "involving a motor vehicle" was not "broad enough to cover the types of negligence" alleged in the Estate's complaint. The court reasoned that "the decision as to what trailer to haul the product in [did] not necessarily involve a motor vehicle," nor did the decision "to allow the feed mill employees to go up on that trailer." The court emphasized that the Estate's complaint did not allege negligence "in the actual driving, the actual operation" of the tractor-trailer. The court concluded that, for purposes of § 893.54(2m), "an accident involving a motor vehicle requires that the motor vehicle be in motion, illegally parked, parked without lights on, something like that." The court therefore denied the Defendants' motion for summary judgment, and this appeal follows.

## STANDARD OF REVIEW

¶11    We independently review a summary judgment decision, using the same methodology as the circuit court. *See* **Hardy v. Hoefferle**, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶12 "Notwithstanding a dispute on the merits, a defendant may be entitled to summary judgment by establishing that the action was not filed within the limitations period set forth in the statute of limitations."[3] ***Paul v. Skemp***, 2001 WI 42, ¶9, 242 Wis. 2d 507, 625 N.W.2d 860. Here, it is undisputed that the Estate's claims accrued on the date of Wiemer's death and that the Estate did not file suit within two years of that date. Consequently, if the two-year statute of limitations in WIS. STAT. § 893.54(2m) applies, then the Estate did not timely file suit, and the circuit court should have granted the Defendants summary judgment. The parties dispute, however, whether § 893.54(2m) applies to the Estate's claims. Determining which statute of limitations applies to an action is a question of law that we review de novo. ***Estate of Hegarty ex rel. Hegarty v. Beauchaine***, 2001 WI App 300, ¶14, 249 Wis. 2d 142, 638 N.W.2d 355. To do so, we must interpret § 893.54(2m) and apply its language to the undisputed facts of this case that are relevant to its application.

¶13 Statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***Id.*** We interpret statutory

---

[3] On appeal, the Estate asserts that the circuit court properly denied the Defendants' summary judgment motion because there are factual disputes regarding: (1) whether the Defendants were negligent; and (2) whether their negligence was a cause of Wiemer's death. This argument fails because a factual dispute regarding the merits of a plaintiff's claim does not prevent the court from granting summary judgment on statute of limitations grounds. *See **Paul v. Skemp***, 2001 WI 42, ¶9, 242 Wis. 2d 507, 625 N.W.2d 860. A factual dispute must be *material* to preclude summary judgment. WIS. STAT. § 802.08(2). For purposes of the Defendants' summary judgment motion, the *material* facts—i.e., the facts pertaining to whether the Estate timely filed suit—are not disputed.

6

language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning" without consulting extrinsic sources of interpretation, such as legislative history. *Id.* (citation omitted).

## DISCUSSION

¶14 As noted above, WIS. STAT. § 893.54(2m) provides a two-year statute of limitations for actions brought "to recover damages for death caused by the wrongful act, neglect, or default of another and arising from an accident involving a motor vehicle." On appeal, it is undisputed that the Estate's wrongful death lawsuit is an action "to recover damages for death caused by the wrongful act, neglect, or default of another." *See id.* The disputed issues are: (1) whether the tractor-trailer qualified as a "motor vehicle" for purposes of § 893.54(2m); (2) whether Wiemer's accident "involv[ed]" a motor vehicle; and (3) whether Wiemer's death "ar[ose] from" an accident.

**I. The tractor-trailer was a motor vehicle for purposes of WIS. STAT. § 893.54(2m).**

¶15 The Defendants argue—and the circuit court agreed—that the tractor-trailer at issue in this case qualified as a motor vehicle for purposes of WIS. STAT. § 893.54(2m). We likewise conclude that the tractor-trailer qualified as a motor vehicle under the plain language of that statute.

¶16 WISCONSIN STAT. § 893.54(2m) does not define the term "motor vehicle." In construing statutes, however, we "recognize the fundamental proposition that the legislature, in enacting statutes, is presumed to do so with full

7

knowledge and awareness of existing statutes." ***State ex rel. McDonald v. Circuit Ct. for Douglas Cnty.***, 100 Wis. 2d 569, 578, 302 N.W.2d 462 (1981). Here, the Defendants cite multiple statutory definitions of the term "motor vehicle" and argue that the tractor-trailer satisfied each of those definitions. We agree with the Defendants' analysis.

¶17    First, the Defendants note that the legislature has provided a definition of "motor vehicle" in the motor vehicle code. Specifically, WIS. STAT. § 340.01(35) provides, in relevant part:

> "Motor vehicle" means a vehicle, including a combination of 2 or more vehicles or an articulated vehicle, which is self-propelled, except a vehicle operated exclusively on a rail. "Motor vehicle" includes, without limitation, a commercial motor vehicle or a vehicle which is propelled by electric power obtained from overhead trolley wires but not operated on rails.

Under this definition, the term "motor vehicle" includes both "a combination of 2 or more vehicles … which is self-propelled" and a "commercial motor vehicle." ***Id.***

¶18    The tractor-trailer at issue in this case qualified as a motor vehicle under both of these alternative clauses. Under the first alternative, the tractor-trailer was a motor vehicle because it was "a combination of 2 or more vehicles … which is self-propelled." WIS. STAT. § 340.01(35). Under the motor vehicle code, the term "vehicle" means "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except railroad trains." Sec. 340.01(74). Applying this definition, both the trailer in which Wiemer died and the semi-tractor that pulled the trailer were vehicles, as it is undisputed that both components were used to transport persons or property upon highways. It is also undisputed that the semi-tractor and trailer were attached to one another during both

the transport and the unloading of the corn gluten and, specifically, at the time of Wiemer's death.  Thus, at all relevant times, the tractor-trailer was a combination of two vehicles.  It is further undisputed that this combination of two vehicles was self-propelled.  As such, the tractor-trailer qualified as a motor vehicle under the first portion of the definition in § 340.01(35).

¶19    The tractor-trailer also qualified as a motor vehicle under WIS. STAT. § 340.01(35) because it met the definition of a "commercial motor vehicle."  As relevant here, "commercial motor vehicle" means

> a motor vehicle designed or used to transport passengers or property and having one or more of the following characteristics:
>
>  ….
>
> (b) The vehicle is a combination vehicle with a gross combination weight rating, registered weight or actual gross weight of 26,001 or more pounds inclusive of a towed unit with a gross vehicle weight rating, registered weight or actual gross weight of more than 10,000 pounds.

Sec. 340.01(8)(b).  The Estate does not dispute that the tractor-trailer was designed to transport property.  Furthermore, according to the Estate's amended complaint, the weight of the corn gluten in the trailer alone was almost two times 26,001 pounds.  Thus, the tractor-trailer was a combination vehicle with an "actual gross weight of 26,001 or more pounds inclusive of a towed unit with … [an] actual gross weight of more than 10,000 pounds."  *See id.*

¶20    In addition to meeting the definition of a motor vehicle in WIS. STAT. § 340.01(35), the Defendants also argue that the tractor-trailer qualified as a motor

vehicle under the definitions in WIS. STAT. §§ 344.01(2)(b) and 632.32(2)(at).[4] Again, we agree with the Defendants' analysis, which further supports our conclusion that the tractor-trailer was a motor vehicle for purposes of WIS. STAT. § 893.54(2m).

¶21 WISCONSIN STAT. § 344.01(2)(b) provides that a motor vehicle means "a self-propelled vehicle *and also includes trailers and semitrailers designed for use with such vehicles*." (Emphasis added.) It is undisputed that the trailer at issue in this case was designed for use with a self-propelled vehicle—i.e., a semi-tractor. Thus, the tractor-trailer combination met the definition of a "motor vehicle" in § 344.01(2)(b).

¶22 WISCONSIN STAT. § 632.32(2)(at), in turn, states that a motor vehicle is "a self-propelled land motor vehicle designed for travel on public roads and subject to motor vehicle registration under [WIS. STAT.] ch. 341" and that "*[a] trailer or semitrailer that is designed for use with and connected to a motor vehicle shall be considered a single unit with the motor vehicle.*" (Emphasis added.) The Estate does not dispute that the semi-tractor qualified as a motor vehicle, and it is undisputed that the trailer was designed for use with the semi-tractor and was connected to the semi-tractor at the time of Wiemer's death. As such, the semi-tractor and trailer qualified as a single motor vehicle under the definition in § 632.32(2)(at).

¶23 In arguing that the tractor-trailer was not a motor vehicle, the Estate focuses on the definition of motor vehicle in WIS. STAT. § 340.01(35). The Estate argues that the tractor-trailer was not a "combination" of two or more vehicles

---

[4] WISCONSIN STAT. ch. 344 pertains to financial responsibility for vehicles. WISCONSIN STAT. § 632.32 pertains to provisions of motor vehicle insurance policies.

because "[w]hen breaking the bridge, the trailer does not work in 'combination' with the tractor." Section 340.01(35) merely states, however, that a motor vehicle includes "a combination of 2 or more vehicles … which is self-propelled." A "combination" is "a result or product of combining." *Combination*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/combination (last visited Aug. 2, 2023).[5] To "combine," in turn, means "to bring into such close relationship as to obscure individual characters : MERGE." *Combine*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/combine (last visited Aug. 2, 2023).

¶24 Here, the semi-tractor and trailer were combined when they were attached to one another—that is, when they were merged into a single vehicle. At that point, they became a "combination" until they were detached. The definition of "motor vehicle" in WIS. STAT. § 340.01(35) merely required the semi-tractor and trailer to *be* a "combination"; it did not require a showing that they *worked in combination* to break the bridge that had formed inside the trailer. We therefore reject the Estate's argument that the tractor-trailer was not a motor vehicle because the two components did not work in combination to break the bridge.

¶25 Relatedly, the Estate argues that the tractor-trailer was not a "combination" of two vehicles under the circumstances of this case because Wiemer "did not die when the trailer was in transit, propelled by the tractor on a public highway. [He] died when the trailer had no need for the tractor, or its attachment." Again, though, under the plain meaning of the term "combination," the semi-tractor

---

[5] WISCONSIN STAT. § 340.01(35) does not define the term "combination." However, when a statutory term is undefined, its ordinary and accepted meaning can be established by reference to a recognized dictionary. **Door Cnty. Highway Dep't v. DILHR**, 137 Wis. 2d 280, 293-94, 404 N.W.2d 548 (Ct. App. 1987).

and trailer were combined when they were attached to one another. It is undisputed that they were attached at the time of Wiemer's death. Nothing in WIS. STAT. § 340.01(35) states that "a combination of 2 or more vehicles … which is self-propelled" qualifies as a motor vehicle only when the combination is in transit on a highway.

¶26    The Estate also argues that the "common, ordinary and accepted meaning of 'motor vehicle' is [that] a 'motor' be an integral part of the unit." Because the trailer did not have a motor and was not capable of self-propulsion, the Estate contends that the trailer did not fall within the plain meaning of the term "motor vehicle." This argument fails because it ignores the definitions of "motor vehicle" set forth in WIS. STAT. §§ 340.01(35), 344.01(2)(b), and 632.32(2)(at), all of which recognize that a combination vehicle that includes both a self-propelled unit and an attached trailer qualifies as a single motor vehicle.

¶27    Next, the Estate contends that if the legislature had intended the term "motor vehicle" in WIS. STAT. § 893.54(2m) to include a "tractor-trailer combination" or a "gravity-operated trailer," it would have included those terms in the statute. We disagree. As noted above, the legislature provided definitions of the term "motor vehicle" in WIS. STAT. §§ 340.01(35), 344.01(2)(b), and 632.32(2)(at). The tractor-trailer combination at issue in this case qualified as a motor vehicle under each of those definitions. Under these circumstances, there was no need for the legislature to specify in § 893.54(2m) that a tractor-trailer combination qualified as a motor vehicle for purposes of that statute.

¶28    The Estate also argues that while in transit on a public highway, a trailer is merely "part of" a motor vehicle, and WIS. STAT. § 893.54(2m) does not apply to an accident involving "part of" a motor vehicle. Once again, however, this

argument disregards the definitions of "motor vehicle" in WIS. STAT. §§ 340.01(35), 344.01(2)(b), and 632.32(2)(at), each of which contemplate that a single motor vehicle can include both a trailer and a self-propelled unit. Additionally, as the Defendants aptly note, the Estate's argument that § 893.54(2m) does not apply to an accident involving only "part of" a motor vehicle would lead to absurd results, as it would "allow a party to escape the effects of … § 893.54(2m) because only the front bumper of a car hit him."

¶29 Next, the Estate argues that the tractor-trailer combination did not qualify as a "motor vehicle" under the definition in WIS. STAT. § 340.01(35) because § 340.01 provides separate definitions of the terms "trailer," "motor vehicle," and "truck tractor." *See* § 340.01(35), (71), (73). Because the legislature provided separate definitions for these three terms, the Estate asserts we must presume that the legislature intended them to have different meanings, with no overlap between the three. This argument is unpersuasive, as it disregards the plain language of the relevant definitions.

¶30 As discussed above, under WIS. STAT. § 340.01(35), a "motor vehicle" includes "a combination of 2 or more vehicles … which is self-propelled." The definition of trailer in § 340.01(71) does not exempt a trailer from being part of such a combination. Rather, § 340.01(71) recognizes that a trailer is a vehicle "without motive power designed for carrying property or passengers wholly on its own structure *and for being drawn by a motor vehicle*." (Emphasis added.) A "truck tractor," in turn, is defined as "a motor vehicle *designed and used primarily for drawing other vehicles* and not so constructed as to carry a load other than a part of the weight of the vehicle and load so drawn." Sec. 340.01(73) (emphasis added). This definition recognizes that a truck tractor is designed to draw other vehicles, and

it does not prevent a conclusion that a truck tractor, in combination with an attached trailer, can constitute a single motor vehicle under § 340.01(35).

¶31     The Estate also cites several cases in support of its claim that the tractor-trailer did not qualify as a motor vehicle for purposes of WIS. STAT. § 893.54(2m).  Principally, the Estate relies on our recent decision in ***Rood v. Selective Insurance Co. of South Carolina***, 2022 WI App 50, 404 Wis. 2d 512, 980 N.W.2d 282, *review denied*, 2023 WI 31.  In ***Rood***, this court considered whether a telehandler—i.e., a large, telescopic forklift—qualified as a motor vehicle for purposes of an exception to WIS. STAT. § 102.03(2), the exclusive remedy provision in the Worker's Compensation Act.  *See **Rood***, 404 Wis. 2d 512, ¶¶1-3.  We concluded that, in the specific context of § 102.03(2), the undefined term "motor vehicle" was ambiguous because it could be interpreted "broadly as including any self-propelled vehicle or device that is capable of being used to transport persons or property on a public roadway" or "narrowly … as including only self-propelled vehicles or devices that are designed and primarily used to transport persons or property on a public roadway." ***Rood***, 404 Wis. 2d 512, ¶30.

¶32     Ultimately, after considering the legislative history and purposes of the exclusive remedy provision, we held that "the purposes of WIS. STAT. § 102.03(2) necessitate that the term 'motor vehicle' be interpreted narrowly to allocate the cost of workers' injuries to the industry in which they occur and to protect workers from financial burdens of coemployee suits." ***Rood***, 404 Wis. 2d 512, ¶35.  We therefore concluded that, as used in § 102.03(2), the term "motor vehicle" "does not include vehicles that are designed primarily for uses other than transporting persons or property upon a public roadway, unless the vehicle was being operated upon a public roadway at the time the employee was injured." ***Rood***, 404 Wis. 2d 512, ¶37.

14

¶33    Our decision in **Rood** relied heavily on the specific context and purposes of the exclusive remedy provision in the Worker's Compensation Act. Given that focus, our conclusion in **Rood** that the term "motor vehicle" was ambiguous as used in WIS. STAT. § 102.03(2) does not compel a conclusion that the same term is ambiguous as used in WIS. STAT. § 893.54(2m). Moreover, as the Defendants correctly note, the tractor-trailer at issue in this case would qualify as a motor vehicle even under the narrower definition adopted in **Rood**. Unlike the telehandler in **Rood**, the tractor-trailer was "designed primarily for … transporting … property upon a public roadway." **Rood**, 404 Wis. 2d 512, ¶37.

¶34    The Estate next cites **State v. Koeppen**, 2014 WI App 94, ¶1, 356 Wis. 2d 812, 854 N.W.2d 849, where we held that a motor bicycle was a motor vehicle for purposes of the statute that criminalizes operating a motor vehicle while intoxicated, "at least when the motor bicycle being operated is self-propelled, rather than pedaled." Based on **Koeppen**, the Estate appears to contend that a vehicle cannot qualify as a motor vehicle under WIS. STAT. § 893.54(2m) unless its motor is running at the time of the accident. We reject this assertion because **Koeppen** required us to determine whether a vehicle that could be both pedaled at times and self-propelled at other times met the definition of a motor vehicle in WIS. STAT. § 340.01(35). **Koeppen** does not stand for the proposition that a combination vehicle that is solely self-propelled—like the tractor-trailer in this case—qualifies as a motor vehicle only when its motor is running.

¶35    Finally, the Estate cites **Rice v. Gruetzmacher**, 27 Wis. 2d 46, 133 N.W.2d 401 (1965), and **Smedley v. Milwaukee Automobile Insurance Co.**, 12 Wis. 2d 460, 107 N.W.2d 625 (1961), both of which addressed whether specific vehicles qualified as motor vehicles under the direct action statute. *See* WIS. STAT.

§ 632.24. The vehicle at issue in *Rice* was a forklift. *Rice*, 27 Wis. 2d at 49. The court concluded that a forklift belongs to a class of "self-propelled-land-vehicles which are designed primarily for uses dissimilar to transporting or drawing persons or property upon a highway" and that a vehicle within that class does not qualify as a motor vehicle under the direct action statute "unless being operated upon a highway at the time of the accident." *Id.* at 51.

¶36    Thus, under *Rice*, the term "motor vehicle" in the direct action statute does not include a vehicle that is not primarily designed for use on highways when that vehicle is being used off-road. As the Defendants correctly note, however, the corollary to this proposition is that "motor vehicles which are primarily designed for use on highways remain motor vehicles whether on the highway or not." Here, the tractor-trailer was designed primarily for transporting property on highways, and it therefore remained a motor vehicle even when it was not being driven on a highway.

¶37    In *Smedley*, the court considered whether a hydraulic crane mounted on a Mack truck chassis qualified as a motor vehicle under the direct action statute. *Smedley*, 12 Wis. 2d at 461-62. The court concluded that the crane was not being used as a motor vehicle at the time of the plaintiff's accident because the crane was stationary at that time, was stabilized, and was rendered immobile by outriggers. *Id.* at 467. According to the court, at the time of the accident, the crane was operating "as an independent immobile unit." *Id.* The court explained, "The test under the statutes is whether at the time of the accident the unit is being *used*, managed, controlled or *operated* as a motor vehicle in the ordinary meaning of those words." *Id.* (emphasis added).

¶38    As discussed in greater detail in the next section, under Wisconsin law, the unloading of a motor vehicle constitutes the use or operation of that vehicle. Here, it is undisputed that Wiemer was actively engaged in unloading the tractor-trailer's cargo at the time of his accident. The tractor-trailer was therefore being used as a motor vehicle at that time. Accordingly, *Smedley* does not compel a conclusion that the tractor-trailer did not qualify as a motor vehicle for purposes of WIS. STAT. § 893.54(2m).

## II.  Wiemer's accident "involv[ed]" a motor vehicle.

¶39    The Defendants next argue that, although the circuit court properly determined that the tractor-trailer was a motor vehicle for purposes of WIS. STAT. § 893.54(2m), the court erred by concluding that Wiemer's accident did not "involv[e]" a motor vehicle. As noted above, the court reasoned that "an accident involving a motor vehicle requires that the motor vehicle be in motion, illegally parked, parked without lights on, something like that." We agree with the Defendants that the court erred in this regard.

¶40    WISCONSIN STAT. § 893.54(2m) does not define the term "involving."[6] However, "involve" is commonly defined as "to engage as a participant" or "to require as a necessary accompaniment." *Involve*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-

---

[6] The Estate asserts that the statutory phrase "involving a motor vehicle" is not ambiguous, but it nevertheless contends that we should consult the legislative history of WIS. STAT. § 893.54(2m) for guidance in interpreting that phrase. The Estate then concedes, however, that the "legislative history provides little guidance in interpreting 'involving,' as it is used in … § 893.54(2m)." We agree with the Estate that the legislative history cited in its brief is not particularly helpful. Moreover, because we conclude that the term "involving" is not ambiguous, we apply the plain meaning of that term, without the need to consult extrinsic sources of interpretation. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

webster.com/dictionary/involve (last visited Aug. 2, 2023). Another dictionary defines "involve" as "to include someone or something in an activity: … *The accident involved two cars and a truck.*" *Involve*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/involve (last visited Aug. 2, 2023).

¶41 Applying these definitions, it is clear that Wiemer's accident involved a motor vehicle—i.e., the tractor-trailer. It is undisputed that the accident occurred when Wiemer climbed on top of the trailer in an attempt to break the bridge, fell into the body of the trailer, became entrapped in the flow of corn gluten inside the trailer, and was smothered. Under these undisputed facts, the tractor-trailer was engaged as a participant in the accident, was a necessary accompaniment to the accident, and was included in the accident. *See Involve*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/involve (last visited Aug. 2, 2023); *Involve*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/involve (last visited Aug. 2, 2023). The accident therefore involved the tractor-trailer.[7]

---

[7] The Estate asserts that Wiemer's death "did not originate from an accident 'requiring' or 'necessitating' a motor vehicle." This claim is plainly meritless. As discussed above, the tractor-trailer combination was a motor vehicle, as defined in the statutes. Wiemer died when he fell into the trailer, which was part of that combination, and was smothered by its cargo of corn gluten. As the Defendants correctly note, "Without the semitrailer, there would have been no corn gluten to unload. Without the semitrailer[,] there would have been nothing for [Wiemer] to climb on and fall into. Without the semitrailer, there would have been no bridged cargo of corn gluten for [Wiemer] to fall through and smother him." Stated differently, without the presence of the trailer—which was part of a combination with the semi-tractor—the accident (and Wiemer's death) would not have happened. As such, there is no basis to claim that the tractor-trailer (a motor vehicle) was not necessary or required for the accident to occur.

¶42 Moreover, under Wisconsin law, the undisputed facts establish that Wiemer was "using" or "operating" the tractor-trailer at the time of his death. Wisconsin courts have long held, in the insurance coverage context, that the use or operation of a vehicle includes the loading and unloading of its cargo.[8] *See, e.g.*, *Amery Motor Co. v. Corey*, 46 Wis. 2d 291, 297, 174 N.W.2d 540 (1970) ("Persons actively engaged in loading and unloading the automobile in the commonly accepted meaning of those words are considered to be using or operating the automobile."); *Blasing v. Zurich Am. Ins. Co.*, 2014 WI 73, ¶37, 356 Wis. 2d 63, 850 N.W.2d 138 (explaining that courts have interpreted the term "use" broadly, that use of a vehicle "is not limited to the driving of the vehicle," and that use includes "a wide range of non-driving activities," including loading and unloading). Under this case law, Wiemer—who was actively engaged in unloading the corn gluten from the tractor-trailer at the time of his accident—was using the tractor-trailer at that time. We agree with the Defendants that "[a] trailer whose use causes a fatal accident certainly is 'involved' in" that accident.

¶43 In support of its conclusion that the accident did not involve the tractor-trailer, the circuit court reasoned:

> [W]e don't have any problem [with] how that motor vehicle … was driven, or what happened. It is … the decisions outside of the operation of the motor vehicle.

---

[8] The Estate argues that insurance coverage cases are not relevant to our interpretation of WIS. STAT. § 893.54(2m) because courts apply "different rules" when interpreting statutes and insurance policies. *See Zarder v. Humana Ins. Co.*, 2010 WI 35, ¶44, 324 Wis. 2d 325, 782 N.W.2d 682. The only specific difference cited by the *Zarder* court, however, pertained to the rules of interpretation that apply when we determine that a statute or policy term is ambiguous. *Id.*, ¶¶44-45. "[W]hen there is ambiguity in an insurance policy, it is construed in favor of coverage. By contrast, when there is ambiguity in a statute, the court looks to the legislature's intent in enacting it." *Id.*, ¶45. In this case, we do not conclude that § 893.54(2m) is ambiguous in any way. As such, the difference in interpretive methodology noted by the *Zarder* court has no relevance here.

19

....

> I think that the decision as to what trailer to haul the product in does not necessarily involve a motor vehicle. It involves a business decision or some other type of decision that was made at some point.
>
> And I think the, the decision to allow the feed mill employees on that trailer, again, doesn't involve a motor vehicle to the degree that … is covered by that two-year Statute of Limitations.
>
> I agree with the [Estate] … that [the accident] doesn't involve negligence in the actual driving, the actual operation of, of that vehicle.

¶44     We reject the circuit court's analysis because, as discussed above, Wisconsin law holds that the operation of a motor vehicle includes its loading and unloading.    Thus, the Estate's amended complaint—which alleges that the Defendants were negligent by "[l]oading, transporting and unloading the pelletized corn gluten … with a gravity[-]operated hopper trailer"—*does* allege negligence in the operation of the tractor-trailer.   Moreover, regardless of the business decisions that may have preceded Wiemer's accident, the accident itself clearly involved a motor vehicle—i.e., the tractor-trailer.

¶45     The Estate also argues that the Defendants' "negligent handling and management of the product caused the product to bridge," and that "[n]o one was 'operating' the trailer, tractor or combination thereof" at the time of Wiemer's death. The Estate contends that, when the accident occurred, Wiemer was merely "sitting on the trailer breaking the bridge."  The Estate then cites ***Burg ex rel. Weichert v. Cincinnati Casualty Insurance Co.***, 2002 WI 76, ¶¶20-22, 254 Wis. 2d 36, 645 N.W.2d 880, where our supreme court concluded that sitting on a parked snowmobile with its engine off did not constitute operation of the snowmobile. Here, however, Wiemer was not just sitting on the trailer when the accident

occurred. He was actively participating in unloading the trailer by attempting to break the bridge. As discussed above, unloading a vehicle constitutes the use or operation of that vehicle under Wisconsin law.

¶46 Moreover, under the Estate's own theory, it was *during* the transport of the corn gluten that the bridge inside the trailer formed. Thus, when unloading the corn gluten from the tractor-trailer—a motor vehicle—the Defendants' alleged negligence occurring during the transport was directly at play. This additional consideration further supports our conclusion that Wiemer's accident involved a motor vehicle.

¶47 In the guise of construing the word "involving," the Estate also argues that WIS. STAT. § 893.54(2m) should not apply to its lawsuit because "the policy behind statutes of limitations is to prevent unlimited prosecution of stale claims, to preserve evidence and not have memories fade." The Estate asserts that, under the circumstances of this case, "in no way has [this policy] been frustrated" by the Estate's failure to file suit within two years of Wiemer's death.

¶48 We need not consider the Estate's cited policy considerations, however, because we conclude that the relevant statutory language is unambiguous. *See Milwaukee Dist. Council 48 v. Milwaukee County*, 2019 WI 24, ¶18, 385 Wis. 2d 748, 924 N.W.2d 153 ("[W]e do not reach beyond the statutory text itself to consider the practical, political, or policy implications of the law, nor do we weigh the extrinsic ramifications of our construction …. Instead, we confine our analysis of unambiguous laws to their text."); *VanCleve v. City of Marinette*, 2003 WI 2, ¶56, 258 Wis. 2d 80, 655 N.W.2d 113 ("[P]ublic policy considerations cannot trump unambiguous statutes."). Under the unambiguous language of WIS. STAT. § 893.54(2m), the accident in this case involved a motor vehicle. Thus, assuming

that Wiemer's death arose from that accident, the two-year statute of limitations in § 893.54(2m) bars the Estate's claims, regardless of whether this result furthers the policy considerations underlying the statute.

### III. Wiemer's death "ar[ose] from" an accident.

¶49 Finally, although not addressed by the circuit court, the Defendants also assert that Wiemer's death "ar[ose] from an accident," as required by WIS. STAT. § 893.54(2m). The Estate disputes this assertion. We agree with the Defendants and conclude the undisputed facts show that Wiemer's death arose from an accident.

¶50 To "arise" means "to begin to occur or to exist," "to come into being or to attention," or "to originate from a source." *Arise*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/arise (last visited Aug. 2, 2023). Consistent with these definitions, our supreme court has held that the phrase "arising out of" in the Worker's Compensation Act "refers to the causal origin of the injury."[9] *Goranson v. DILHR*, 94 Wis. 2d 537, 549, 289 N.W.2d 270 (1980). Similarly, as used in liability insurance policies, the words "arising out of" "are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and

---

[9] Although WIS. STAT. § 893.54(2m) uses the phrase "arising from" rather than "arising out of," we see no material difference between these two phrases, and the Estate does not develop any argument that "arising from" and "arising out of" have different meanings. To the contrary, we agree with the Defendants that "both 'from' and 'out of' connote origin," and the Estate's claims "originate from an accident whether they 'arise from' or 'arise out of'" that accident.

the risk for which coverage is provided."[10] ***Lawver v. Boling***, 71 Wis. 2d 408, 415, 238 N.W.2d 514 (1976).

¶51 Pursuant to these authorities, Wiemer's death "ar[ose] from" an accident for purposes of WIS. STAT. § 893.54(2m) if his death originated from an accident—in other words, if there was a causal relationship between an accident and his death. Again, it is undisputed that Wiemer's death occurred when he climbed on top of the trailer in an attempt to break the bridge, fell into the body of the trailer, became entrapped in the flow of corn gluten, and was smothered. The Estate does not dispute that these events constituted an accident—that is, "an unforeseen and unplanned event or circumstance." *See Accident*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/accident (last visited Aug. 2, 2023). The undisputed facts show that Wiemer's death was caused by this accident. Consequently, Wiemer's death "ar[ose] from" an accident, pursuant to the plain language of § 893.54(2m).

## CONCLUSION

¶52 For the reasons explained above, we conclude the undisputed facts of this case establish that Wiemer's death arose from an accident involving a motor vehicle. Consequently, the Estate's lawsuit alleging that the Defendants' negligence caused Wiemer's death was untimely under WIS. STAT. § 893.54(2m) because it was commenced more than two years after the Estate's cause of action accrued. As a result, the circuit court erred by denying the Defendants' motion for summary

---

[10] The Estate asserts that the Defendants improperly cite "statutes and case law interpreting insurance contracts" when interpreting the phrase "arising from" in WIS. STAT. § 893.54(2m). The Estate does not, however, provide any alternative interpretation of the phrase "arising from."

judgment. We therefore reverse the court's order and remand for the court to grant the Defendants' summary judgment motion and dismiss the Estate's claims.

*By the Court.*—Order reversed and cause remanded with directions.